IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC B., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 17-CV-5466 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION & ORDER

Eric B. brings this action for judicial review of the Social Security Administration's decision denying his application for both disability insurance benefits and supplemental security income under the Social Security Act. For the reasons set forth below, the decision of the ALJ is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and remanded for further proceedings consistent with this Order.

### Background

Claimant applied for disability insurance benefits and supplemental security income on November 6, 2013, alleging a disability as of October 7, 2010. His application was denied initially and on reconsideration. On April 13, 2016, Claimant had a hearing before an administrative law judge. R. 38. In a decision dated July 22, 2016, the ALJ denied Claimant's claim. R. 30. The Appeals Council declined review on May 26, 2017, leaving the ALJ's decision as the final decision of the SSA, reviewable by this Court pursuant to 42 U.S.C. § 405(g). R. 1.

### Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," that is, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R.

§§ 404.1520(4)(a)(4), 416.920(a)(4)[1]. The ALJ must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which disability is claimed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *See id.*; *see also Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since the onset date. R. 20 (acknowledging that Claimant had worked following the onset date but that it "did not rise to the level of substantial gainful activity"). At step two, the ALJ determined that Claimant had severe impairments of disorders of the back, peripheral neuropathy, asthma, obesity, poor vision, and affective disorder. R. 22. At step three, the ALJ determined that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R. 20. At step four, the ALJ found that Claimant does not have the residual functional capacity ("RFC") to perform his past relevant work as a cleaner, inspector, and hand packager. R. 28. At step five, the ALJ found that Claimant was able to perform other work existing in significant numbers in the national economy such as a packer, an assembler, or a sorter. R. 29. As a result, the ALJ concluded the Claimant was not disabled.

If the ALJ's decision is not supported by substantial evidence on the record, the decision must be remanded. *See Steele*, 290 F.3d at 940 (explaining that the case must be remanded if the "decision lacks evidentiary support."). An ALJ's subjective symptom evaluation finding is entitled to special deference. *See Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). The ALJ is not required to discuss every piece of evidence or testimony in the record. *See Sawyer v. Colvin*, 512 F.App'x 603, 608 (7th Cir. 2013). Nevertheless, an ALJ must build a logical bridge between the medical evidence and the conclusion. *See Blakes ex rel Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (citing *Steele*, 290 F.3d at 941 ("regardless of whether there is adequate evidence in the record to support an ALJ's decision, the ALJ must rationally articulate the grounds for her decision, building an accurate and logical bridge between the evidence and her conclusion because we confine our review to the reasons supplied by the ALJ")).

## I. RFC

Claimant alleges both physical and mental impairments that impact his RFC. As such, the ALJ was required to incorporate both Claimant's alleged physical and mental impairments as part of the RFC determination.

---

[1] The regulations governing DIB and SSI are codified independently, but those relevant to this case are virtually identical. Therefore, citations will only be made to the DIB regulations, found at 20 C.F.R. §§ 404.900-.999 and 20 C.F.R. §§ 404.1500-.1599. The parallel SSI regulations are found at 20 C.F.R. §§ 416.1400-.1499, and 20 C.F.R. §§ 416.900-.999.

A.  **Mental Impairment**

Claimant argues that the ALJ's formulation of a mental RFC was inadequate because it did not "encapsulate the moderate limitations in concentration, persistence, or pace also found by the ALJ." Doc. [18] at 13. Alleged limitations in concentration, persistence, or pace are important to the determination of Claimant's RFC here because Kirk Boyenga, Ph.D. and Thomas Low, Ph.D. – who were given significant weight – found that Claimant had a personality disorder and limitations in social functioning, concentration, persistence, or pace. R. 27, 146-47, 174, 198.

Concentration, persistence or pace refers to the ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings. *See* POMS DI 22511.005. "Again and again, [the Seventh Circuit has] said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, No. 18-2228, 2019 WL 494052, at *4 (7th Cir. Feb. 8, 2019) (collecting cases); *see also Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. Apr. 2, 2009) ("When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by medical evidence in the record.") (collecting cases).

None of the hypotheticals asked of the VE by the ALJ accounted for such limitations. Hypothetical number one asked,

> Assuming a hypothetical individual the same age, education and work experience as [Claimant]. At the light level of exertion, no ladders, ropes or scaffolds; occasional stairs and ramps, stopping, crouching; unlimited balancing, kneeling and crawling. The individual retains the capacity for jobs that use fine acuity only occasionally, so the individual retains the ability to work and see within the range of up to 20 feet. Can tolerate frequent exposure to odors, dust, fumes, and other pulmonary irritants, moving mechanical parts and unprotected heights. Individual retains the capacity for routine, repetitive tasks, occasional contact with the public and co-workers; a low stress environment defined as having only simple, routine, work-related decisions and few, if any, changes in the work environment. Can the individual perform the past work?

R. 72. Hypothetical number two asked, "Hypothetical number two is going to be the same as number one, but overhead reaching bilaterally is limited to the occasional level. Can the individual perform the past work?" R. 73.

Hypothetical number three asked,

> Hypothetical number three is going to be at the sedentary level with a sit/stand option. After sitting for one hour, can stand for five minutes, and then sit again without being off-task. No ladders, ropes or scaffolds; occasional stairs, ramps, stooping[,] crouching, kneeling and crawling. Unlimited balancing. Just a second. Retains

3

> – the individual retains the capacity for jobs with only occasional use of far acuity, but retains the ability to work and see within the range of 20 feet. Can tolerate frequent exposure to odors, dust, fumes and other pulmonary irritants, moving mechanical parts, and unprotected heights. The individual retains the capacity for routine, repetitive tasks; occasional contact with the public and co-workers; a low stress environment, defined as having only simple, routine, work-related decisions and few, if any changes, in the work environment. Overhead reaching bilaterally is limited to occasional. Can an individual perform the past work?

R. 74. The fourth hypothetical also did not encapsulate Claimant's alleged limitations in concentration, persistence, or pace: "Hypothetical number four is going to be the same as three, but the individual will be off-task 15% of the day due to psychiatric symptoms, and also missing three or more days of work due to psychiatric symptoms. Can the individual perform the past work?" R. 74.

Defendant suggests that the ALJ did reasonably account for Claimant's limitations in concentration, persistence, or pace because such difficulties were effectively considered by limitations in routine, repetitive tasks; a low-stress environment; and occasional contact with the public and coworkers. Doc. [26] at 8. In support of this argument, Defendant claims that doctors effectively considered Claimant's limitations in concentration, persistence, or pace to specific work-related limitations of "simple, routine, and repetitive tasks with reduced interpersonal contact." Doc. [26] at 8 (citing R. 29, 174, 193, 180, 199). This argument fails for two reasons.

First, although the phrase "limitations of concentration, persistence, and pace" need not be parroted to show that the ALJ considered such, courts have held that limiting a claimant to routine and repetitive tasks "will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence, and pace." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010). Second, the sections of the record cited by the defendant to show that the Claimant's limitations of simple, routine, and repetitive were effectively considered by the ALJ do not support such a position. *See, e.g.*, R. 29, 174, 193, 180, 199. For example, on R. 174, Dr. Low noted that "it was very hard to make him focus and sit down. Claimant's recall was zero." R. 174. However, R. 174 does not suggest a relationship between limitations in concentration, persistence, or pace and a limitation to simple, routine, and repetitive tasks. R. 174. Similarly, R. 180 and 199 do not suggest that a limitation of simple, routine, and repetitive tasks effectively accounts for any limitation in concentration, persistence, or pace. Rather, R. 180 and 199 state that Claimant "is capable of performing simple tasks. Social skills are impaired, but allow settings with reduced interpersonal contact. Claimant is able to retain friendships. Adaptation abilities are limited, but allow routine, repetitive tasks." R. 180 and 199. Nor does R. 193 support Defendant's position that Dr. Low purportedly translated one limitation to another. R. 193 rather notes that Claimant has moderate difficulties in maintaining concentration, persistence, or pace and that it is "very hard to make [Claimant] focus and sit down." R. 193. R. 193 does not suggest that Dr. Low translated limitations in concentration, persistence, or pace into limitations of simple, routine, and repetitive tasks. Accordingly, this Court cannot follow

4

Defendant's position that the limitations considered by the ALJ effectively constituted consideration of Claimant's alleged limitations in concentration, persistence, or pace.

Accordingly, this Court finds that the ALJ did not adequately consider whether Claimant could perform jobs in the national economy with respect to his alleged limitations in concentration, persistence, or pace. On remand, the ALJ is instructed to consider Claimant's limitations of concentration, persistence, and pace.

Claimant also argues that the ALJ's RFC determination with respect to "off-task time" and its impact on Claimant's employability was inadequate because it did not reflect the amount of worktime Claimant would be off-task compared to a future employer's tolerance for time spent off-task. Claimant's anticipated time off-task matters because the VE testified that 15% off-task time would preclude Claimant's employability. R. 75. The ALJ concluded that the Claimant can perform sedentary work without being off-task while working if he stands for 5 minutes for every hour of sitting.[2]

First, even though hallucinations can increase an individual's off-task time, the ALJ did not address the impact of Claimant's hallucinations on off-task time. Rather, the ALJ found that "although the claimant has experienced periodic exacerbation of his mental health symptoms, the record indicates that he [is] quickly stabilized with medication." R. 26. But no physician in the record has provided such a broad sweeping evaluation. This finding is patently erroneous because the record actually suggests that, despite medications, he still suffers from occasional hallucinations. For example, Claimant occasionally hears voices in his head. R. 750-64. Claimant's history of hallucinations are significant: they convinced him to attempt suicide and attempt murder of a newborn child and its mother. R. 546. Additionally, despite medication, the record shows that his paranoia led him to hit a woman because he thought that she was following him. R. 69. And Claimant has testified that he does not get along with authority figures because he is "scared" of them. R. 341, 364. As a potential result of the ALJ's erroneous determination that Claimant's medications resolve his hallucinations, the ALJ did not account for the VE's testimony that anticipated hallucinations at work could contribute to off-task time and hinder the other employees' ability to stay on task. R. 79.

In *Spiva v. Astrue*, 628 F.3d 346, 350-53 (7th Cir. 2010), the Seventh Circuit found an ALJ's decision was "unsatisfactory" where it did not explain how an individual suffering from hallucinations could perform certain work. As in *Spiva*, the ALJ in this case did not reconcile Claimant's tendency to hallucinate while medicated in determining that he is able to perform sedentary jobs such as a packer, assembler, or sorter. The ALJ should have at least considered whether potential hallucinations could impact Claimant's time off-task or the likelihood to hinder other employees' ability to stay on-task. *See* R. 79. Rather the ALJ quickly concluded that Claimant could perform work that involved "occasional contact with the public or coworkers" without explicitly addressing such ramifications. R. at 22. The ALJ's lack of discussion with respect to the VE's testimony that hallucinations could bar employment, R. 79, is a critical

---

[2] This Court analyzes the affect of switching between sitting and standing on Claimant's off-task time below within the physical impairment section.

5

analytical omission and so this Court cannot hold that the ALJ's decision was based on substantial evidence on the record. Thus, remand is warranted. On remand, the ALJ is instructed to analyze the impact of Claimant's mental impairments, including his hallucinations, on off-task time.

Second, the ALJ did not consider Claimant's ability to work with supervisors. An ALJ's reluctance to analyze whether a claimant could work with supervisors has been a cause for remand in other cases. *See, e.g.*, *Young v. Barnhart*, 362 F.3d 996, 1002 (7th Cir. 2004) ("Although this RFC requires that Young have limited contact with the public and coworkers, it says nothing of limiting contact with supervisors, despite the fact that there was substantial evidence within the record that Young has difficulty accepting instruction, responding appropriately to criticism, and interacting with others on the job."). Here, like *Young*, the RFC is silent with respect to limiting contact with supervisors despite the record showing how Claimant has difficulty working with them. For example, Claimant has reported that he is scared of authority figures and therefore does not get along with them well. R. 341. Accordingly, this case is remanded so that the ALJ can further determine whether an RFC limitation regarding supervisor interactions is necessary.

### B. Physical Impairment

Claimant argues that remand is additionally required because the ALJ did not consider the factors under 20 CFR §§ 401.1529(c)(3). Section 401.1529(c)(3) recognizes that symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone. As such, under section 401.1529(c)(3), factors to be considered are (i) daily activities; (ii) location, duration, frequency, and intensity of pain and other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or have taken to alleviate pain or other symptoms; (v) treatment, other than medication, the claimant receives or have received for relief of pain or other symptoms; (vi) any measures the claimant uses or used to relieve pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

The Court disagrees with Claimant's contention that the ALJ failed to adequately consider § 401.1529(c)(3)'s factors. First, the ALJ recognized that she "considered all symptoms and to the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 96-4p." R. 22.

Next, the ALJ also considered Claimant's daily activities. *See* R. 21 ("In activities of daily living, the claimant has mild restriction. The claimant states that he has difficulties with his personal care, and that he often depends on family members. However the claimant remains able to do household chores, such as taking out the garbage, and he goes for walks, watches television, and has worked in several part-time jobs."); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (highlighting the importance of ADL analysis by noting that "[t]he critical differences between [ADL] and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer."). The ALJ further considered location,

duration, frequency, and intensity of pain and other symptoms, in addition to precipitating and aggravating factors. *See id.* at 27-33 (recognizing certain precipitating and aggravating factors such as sitting or standing for periods of time and the impact on social interactions). The ALJ considered the impact of Claimant's medications. *See, e.g.*, R. 20 ("the claimant's diabetes is well controlled when the claimant complies with taking his medication"); *id.* at 28 ("[Claimant] stated that medications help control his pain, and that he receives injections that help reduce his pain"); *id.* at 23 ("After resuming his medication, the claimant responded to treatment, and his mood and affect were 'much brighter' with no suicidal or homicidal thoughts."); *id.* ("After adjustments to his medication, the claimant reported that the voices were becoming less frequent."). The ALJ's decision noted treatments other than medication that Claimant has received and weighed their effectiveness. *See, e.g.*, *id.* at 24 ("The claimant participated in chiropractic treatments, and physical therapy"); *see id.* at 27 (mental health therapy). The ALJ's decision recognizes certain measures that the claimant uses or has used to relieve pain or other symptoms. *See, e.g.*, *id.* at 24 (chiropractic treatments, physical therapy, and epidural steroid injections). Finally, the ALJ's decision considered other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. *See, e.g.*, *id.* at 27 (recognizing functional limitations like sitting/standing and low stress environments). Therefore, this Court finds that the ALJ did indeed adequately consider the factors under 20 CFR §§ 401.1529(c)(3).

Claimant challenges the ALJ's determination that Claimant can work a sedentary job if he has a sit/stand option, such that after sitting for one hour, he can stand for five minutes. R. at 22. Claimant argues that this conclusion is not based on substantial evidence and that the ALJ filled an evidentiary deficit with her own lay opinion. *See, e.g.*, *Suide v. Astrue*, 371 Fed.Appx. 684, 690 (7th Cir. 2010) ("it is the evidentiary deficit left by the ALJ's rejection of his reports—not the decision itself—that is troubling."); *Briscoe ex rel. Taylor*, 425 F.3d at 352 ("the ALJ did not explain how he arrived at these conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision."); SSR 96–8p ("RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

In a similar case, *Hamilton v. Colvin*, 525 Fed. Appx. 433, 439 (7th Cir. 2013), the Seventh Circuit determined that an ALJ's finding that a claimant could sit for 45 minutes warranted remand where "neither the medical nor non-medical evidence in the record support[ed] the ALJ's conclusion that Hamilton . . . [could] sit regularly for 45-minute stretches. In fact, the *only* reference to '45 minutes' in the record is from the vocational expert who informed the ALJ that jobs are not available for people who cannot sit for at least that long." *Id.* Similarly, here, the record does not specifically support the ALJ's conclusion that Claimant can sit for one hour if he has five minutes to stand. Nor has the government cited any part of the record that suggests such a specific conclusion. The ALJ's conclusion regarding the sit/stand limitation appears to be based on statements in the record that the claimant has a full range of motion with normal muscle strength. That broad language is not the same as citing evidence that the claimant can specifically sit for one hour as long as he stands for five minutes. On the contrary, Claimant testified that he can only sit for 20-30 minutes at a time. S*ee* R. 20 ("Q How long can you sit? A A good 20 minutes."). Moreover, Dr. Ghannam's medical opinion suggested that Claimant could only sit for

7

30 minutes at a time for a total of 2 hours in an 8-hour work day if he takes a 10-minute unscheduled break every hour. *See* R. 781. The other physician opinions cited by the ALJ do not suggest that Claimant can stand throughout a work day if he stands for five minutes for every hour of sitting. *See, e.g.*, Docs. [10-1] at 29-30 (Dr. Carolyn Hildreth), 30 and 32 (Dr. Bhavana Vaidya), 32 (Robert Prescott, Ph.D, James Hinchen, M.D., and Richard Lee Smith, M.D.). Although the ALJ's decision noted how Dr. Bhavana Vaidya opined that Claimant had the ability to sit and stand, there is no dispute that Claimant can do both. Rather, the pertinent inquiry is for how long he can sit in one session before needing to stand. Dr. Vaidya's medical evaluation did not provide a duration for which Claimant can sit before he needs to stand. *See* R. 638-641. As a result, this Court cannot decipher how the ALJ came to its conclusion regarding Claimant's sit/stand time limitation. Accordingly, remand is ordered for further analysis into Claimant's ability to sit.

In addition to the uncertainty as to whether the sit/stand option restriction is even substantially supported by the record to begin with, the ALJ did not analyze its impact on Claimant's time off-task. For example, the VE was asked on cross-examination about the impact of a "worker [who] needed to walk around periodically to stretch[ ] [l]et's say once – once an hour, there was a period of time where he would be leaving the work area for approximately five minutes to stretch?" R. 76. In response, the VE testified that "[t]hat's going to contribute to time off-task, and in any case, if you're ambulating away from your work station, that's not going to be tolerated in competitive employment; therefore, there would be no work." R. 76. The ALJ's decision did not adequately address the VE's testimony or provide an explanation, such as further medical testimony or opinions, as to why this hypothetical was inapplicable. Accordingly, remand is appropriate so that the ALJ can consider the effect of Claimant's sit/stand limitation on Claimant's off-task time.

Claimant further argues that the ALJ erred in considering Claimant's denial of surgery to alleviate his pain. R. 26 ("He is able to control his pain with routine medical care, such as medication and injections, and he has declined surgical intervention."). An individual who meets the requirements to receive benefits under the Social Security Act may be precluded from receiving benefits if the individual fails, without good cause, to follow prescribed treatment that would be expected to restore his or her ability to engage in substantial gainful activity. *See* SSR 18-3p. But good cause to refuse prescribed treatment includes intense fear of surgery. *See id.* Although it was fair for the ALJ to acknowledge Claimant's refusal to obtain prescribed surgery, the ALJ failed to evaluate Claimant's testimony that he refused surgery out of fear. R. 56 ("I'm supposed to get a surgery, but I was kind of scared to do the surgery, because I'm not sure. I don't want to mess it up worser."). Accordingly, on remand the ALJ is instructed to incorporate Claimant's reported fear as part of the analysis that referenced his fear as the reason for avoiding surgery.

## II. Treating Physician

The determination of an individual's RFC should be based on all relevant evidence in the record, including opinions submitted by treating physicians or other acceptable medical sources. Every medical opinion is evaluated regardless of its source, but the Commissioner generally gives greater weight to opinions from a treating source. 20 CFR 404.1527(c)(2). If controlling weight is not given to a treating source's opinion, the Commissioner should consider six factors in

8

deciding the weight given to each medical opinion: (1) whether the source examined the claimant or not; (2) whether the source treated the claimant; (3) the medical signs and laboratory findings that support the given opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is made by a specialist or non-specialist; and (6) any other factor that tends to support or contradict the opinion. 20 CFR 404.1527(c)(1)-(6); *see Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). The checklist requires an ALJ "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). An ALJ's failure to weigh medical opinion evidence pursuant to the factors enumerated in the checklist warrants remand. *See, e.g.*, *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). An ALJ must provide a sound explanation whenever she fails to accord significant weight to a treating medical source's opinion. *See, e.g.*, *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016).

Dr. Ghannam's overall medical evaluation recognized the severity of Claimant's multiple impairments. For example, Dr. Ghannam noted that Claimant's "Flexion was restricted and was painful. Extension was restricted and was painful. Rotation to the left was restricted and was painful. Rotation to the right was restricted and was painful." R. 840. Dr. Ghannam noted Claimant's "Active Problems" to include asthma, benign essential HTN, bipolar disorder, cervical herniated disc, cervical radiculopathy, cervical spondylosis with myelopathy, chronic hepatitis C, chronic major depressive disorder, diabetes mellitus, gastroenteritis, imbalance, lumbar herniated disc, myelopathy, neck pain, palpitations, right knee pain, schizophrenia, abnormal semen, shoulder tendinitis, stool incontinence, upper respiratory infection, and urine incontinence. R. 845-46. The ALJ's discussion into Dr. Ghannam's medical evaluations noted his October 2015 medical source statement in which he stated that Claimant could sit for 30 minutes at a time and for a total of two hours in an eight-hour day, and stand for 10 minutes at a time for a total less than two hours in a day. R. 26. Furthermore, the ALJ recognized that Claimant must regularly shift positions, walk every 10 minutes, and that he needs to take an unscheduled 10 minute break every hour, R. 26, and that Claimant would likely be off-task 25 percent or more of the workday and would miss more than four days of work per month. R. 26.

However, without applying the 20 CFR 404.1527(c) checklist, the ALJ discounted Dr. Ghannam's medical opinion to limited weight "because it is inconsistent with the claimant's treatment notes, which repeatedly state that the claimant maintains full muscle strength, normal range of motion, and a normal gait in spite of his impairments." R. 26-27. Had the ALJ applied the checklist, at the very least, the ALJ would have considered the fact that Dr. Ghannam had treated Claimant for over one year and evaluated Claimant during that span. R. 843, 844, 851, 858, 867, 880, 884, 890, and 896. Analysis of the 20 CFR 404.1527(c) checklist could have explained potential contradictions or deficiencies in Dr. Ghannam's medical reports. Or, it could have resulted in the ALJ giving significant weight to the treating physician's own medical opinion. Therefore, remand is appropriate as the ALJ failed to appropriately analyze the cause for discounting Dr. Ghannam's medical opinion. *See Larson*, 615 F.3d at 751 (reversing ALJ's decision for failure to properly determine the weight to give to a doctor's medical opinion).

9

The errors with respect to the weight afforded to the treating physician's weight is not harmless. For example, if Dr. Ghannam's medical opinion was weighed greater than limited weight, his medical opinions may potentially yield a lower than sedentary RFC. Accordingly, remand is warranted so that the ALJ can properly weigh Dr. Ghannam's medical opinions and then reconsider the RFC, if appropriate.

Finally, absenteeism is important to the ALJ's analysis because the VE testified that potential absenteeism could impact Claimant's employability. R. 75 ("absenteeism of three or more [days] . . . would be excessive for competitive employment; therefore, there would be no work."). Here, Claimant's treating physician, Dr. Ghannam, anticipated that Claimant would have to miss several days of work every month due to his impairments. But, as discussed above, although the ALJ noted Dr. Ghannam's finding that Claimant would miss more than four days per month of work, the issue of absenteeism under the 'limited weight' that she afforded Dr. Ghannam was not sufficiently addressed. As a result, the ALJ's decision did not properly assess the impact of Claimant's potential absenteeism on his employability. This is not a harmless error because if Dr. Ghannam's medical opinion regarding anticipated absenteeism is adopted or considered with more weight, then the Claimant's employability would be significantly affected. *See* R. 75. Accordingly, remand is appropriate so that the ALJ can properly analyze Claimant's anticipated absenteeism.

### III.     State Agency Reviewing Physicians

The ALJ gave considerable weight to the opinion evidence of state agency reviewing physicians, Drs. James Hinchen and Richard Smith. R. 26. Yet the ALJ's analysis of these evaluations is minimal. The ALJ's decision recognizes that "[b]oth doctors found that the claimant remains able to perform *light* exertional work." R. 26 (emphasis added). Despite affording them more weight than the treating physician, the ALJ concluded that Claimant was able to perform only sedentary work in "consideration to the claimant's subjective complaints and hearing testimony." R. 26. The ALJ's decision does not provide enough detail for this Court to understand how the ALJ concluded that a finding of sedentary exertional ability was appropriate in light of the state agency physicians' and Claimant's differing positions. More explanation is needed. The ALJ's decision does not explain how Claimant's testimony led the ALJ to determine that Claimant was capable of "sedentary" work rather than "light" work as suggested by the state agency physicians or disabled, as argued by Claimant. As such, this Court cannot find that the RFC's determination was based on substantial evidence on the record. Accordingly, remand is necessary to reevaluate the proper RFC considering errors discussed herein.

**Conclusion**

       For the above reasons, this Court reverses this case pursuant to sentence four of 42 U.S.C. § 405(g) and remands this case for further proceedings consistent with this Order.

**SO ORDERED.**

Dated: March 25, 2019

                                                                                          Sunil R. Harjani
                                                                                       United States Magistrate Judge